IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

NAUTILUS INSURANCE COMPANY,

        Petitioner,

v.                                 CIVIL ACTION NO.  2:12-cv-06678

JOHNNY CLARK TRUCKING, LLC, et al.,

        Respondents.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is petitioner Nautilus Insurance Company's ("Nautilus") Motion for Summary Judgment [Docket 32] and Johnny Clark, LLC's ("Johnny Clark") Cross Motion for Partial Summary Judgment [Docket 39]. For the reasons stated below, Nautilus's Motion for Summary Judgment [Docket 32] is **GRANTED** and Johnny Clark's Cross Motion for Partial Summary Judgment [Docket 39] is **DENIED**.

    **I.**    **Background**

        **A.  The Underlying Incident**

The facts underlying this federal action are the subject of a pending lawsuit (the "Qualls Lawsuit") in the Circuit Court of Kanawha County, West Virginia. (*See generally* Kanawha Compl. [Docket 33-1]). The lawsuit alleges that Mr. Qualls was driving a coal truck when the truck's brakes failed. Due to the brake failure, Mr. Qualls struck a berm, which caused the truck to roll over. During the accident, Mr. Qualls was ejected from or attempted to exit the truck and was pinned down by the truck when it rolled over. Mr. Qualls was pronounced dead upon arrival of emergency medical services.

The Qualls Lawsuit alleges that at the time of his death, Mr. Qualls was employed by Medford Trucking, LLC ("Medford"). However, Mr. Qualls was hauling coal on behalf of Elk Run Coal Company, Inc. d/b/a Republic Energy ("Elk Run"), pursuant to a contractual agreement between Medford and Elk Run. The truck Mr. Qualls was driving was provided to Medford by Johnny Clark. (*See generally* Trucking Agreement [Docket 33-2]).

### B. Procedural Background of the "Qualls Lawsuit"

After the accident, respondent Nancy Lewis, administrator of Mr. Qualls's estate, filed suit against the respondents Medford and Elk Run. (*See generally* Kanawha Compl. [Docket 33-1]). In her complaint, Ms. Lewis alleges that Medford violated West Virginia law by knowingly exposing Mr. Qualls to unsafe working conditions and that Elk Run negligently failed to provide training, to inspect the truck, to maintain the road, and to provide a safe place to work. Subsequently, Medford filed a Third Party Complaint against Johnny Clark alleging that Johnny Clark was required to provide serviceable trucks. (*See generally* Third Party Compl. [Docket 33-3]). Medford is also seeking contribution and indemnification pursuant to the Trucking Agreement between Johnny Clark and Medford. After Medford filed the Third Party Complaint, Ms. Lewis brought Johnny Clark into the Qualls Lawsuit. (*See generally* Rule 14 Compl. [Docket 33-4]). She alleges that Johnny Clark was negligent for providing Medford a truck in an unsafe and inoperable condition.

### C. Procedural Background for the Instant Declaratory Action

After Ms. Lewis added Johnny Clark as a defendant in the Qualls Lawsuit, the three respondents, Johnny Clark, Medford, and Elk Run, sought coverage under the policy at issue. At the time of the accident, Johnny Clark was insured by Nautilus through a Commercial General Liability Policy, which is designated as Policy No. NN007001 (the "Policy"). (*See generally*

Policy [Docket 33-5]). The Policy identifies Johnny Clark, LLC d/b/a Johnny Clark as the named insured. (*See id.*) Medford is identified as an additional insured. (*See id.*). On October 17, 2012, Nautilus filed the instant petition for declaratory judgment to resolve the scope of its insurance coverage liability towards the respondents. (*See generally* Pet. for Declaratory J. [Docket 1], at 4-5).

### D. Overview of the Policy

The Policy consists of three major portions: declarations, the commercial general liability coverage form, and coverage parts. The declarations portion includes, in relevant part, the Commercial General Liability Coverage Part Declarations and a Schedule of Forms and Endorsements. The Commercial General Liability Coverage Part Declarations states the limits of the Policy, the location and type of business the insured is engaged in, and a list of the classifications that have been applied to the Policy. These classifications are a Trucker classification, which modifies the Policy for the trucking business, and two classifications which incorporate Medford as an additional insured under the Policy. The Schedule of Forms and Endorsements functions like a table of contents and provides a list of every form and endorsement in the Policy, an endorsement being a short amendment to the standard terms of the Policy.

The Commercial General Liability Coverage Form provides, in relevant part, the standard terms for what coverage is provided and to whom, as well as providing the definition of technical words used in the Policy. Section II of the Commercial General Liability Coverage Form governs who is an eligible insured under the Policy. Specifically, individuals, partnerships, limited liability companies, and organizations "designated in the Declarations" (as Johnny Clark is) are insureds. (*See* Commercial General Liability Coverage Form ("CGL Coverage Form")

3

[Docket 33-5], at 8-9). Additionally, employees are insured for "acts within the scope of their employment" but not for bodily injury. (*Id.* at 9). Furthermore, Endorsement L803 provides that Medford is an insured under Section II with respect to liability for bodily injury, but "only for occurrences or coverages not otherwise excluded in the policy." (*See* Endorsement L803 (06/07) [Docket 33-5]).

In Section I of the Commercial General Liability Coverage Form, the Policy extends coverage to bodily injury "caused by an 'occurrence' that takes place in the coverage territory" and "during the policy period[.]" (CGL Coverage Form [Docket 33-5], at 1). However, this coverage does not apply to bodily injury "expected or intended from the standpoint of the insured" or bodily injury to "[a]n 'employee' of the insured arising out of . . . [e]mployment by the insured; or . . . [p]erforming duties related to the conduct of the insured's business[.]" (*Id.* at 2). Additionally, the insurance does not apply to "[a]ny obligation of the insured under a workers' compensation . . . law or any similar law." (*Id.*). The coverage also does not extend to any contractual liability assumed by an insured unless the contract is an "insured contract," which is defined as "[t]hat part of any other contract . . . under which you assume the tort liability of another party to pay for 'bodily injury' . . . to a third person or organization." (*Id.* at 13). Finally, the coverage does not extend to bodily injury "arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, "auto" or watercraft owned [by] any insured." (*Id.* at 4). However, "[t]his exclusion does not apply to . . . [l]iability assumed under any 'insured contract' for the ownership, maintenance or use of aircraft or watercraft." (*Id.* at 4).

The final portion of the policy, coverage parts, provides a series of endorsements which modify the Policy. The first relevant endorsement limits coverage to occurrences arising out of "designated operations." (*See* Endorsement L240 (06/07) [Docket 33-5]). Designated operations

are defined as "only those operations performed by any insured that are described on the General Liability Coverage Part Declarations, the endorsements, or supplements of this insurance." (*Id.*). The next relevant endorsement, as discussed before, adds Medford as an additional insured under the Policy. (*See* Endorsement L803 (06/07) [Docket 33-5]). The last relevant endorsement is the Truckers Classification Description, which excludes the "operation, ownership, maintenance, use or entrustment to others of any 'auto,'" but includes "Products and/or Completed Operations within the General Aggregate Limit." (*See* Endorsement S187 (07/09) [Docket 33-5]).

**II.     Legal Standard**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

However, adequate time for discovery must be granted before the court can examine a motion for summary judgment. *See Celotex*, 477 U.S. at 322. Furthermore, "[w]hen the court overlooks the dispositive issue in a case and proceeds to decide a case summarily before discovery is concluded and before an order of discovery has been complied with, there has been a mistake and inadvertence and one that works an injustice." *White v. Investors Mgmt. Corp.*, 888 F.2d 1036, 1041 (4th Cir. 1989). However, a "party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment[.]" *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). Federal Rule of Civil Procedure 56(d) (formerly Fed. R. Civ. P. 56(f)) provides that "a party opposing summary judgment may file an affidavit providing specific reasons that it cannot oppose a motion for summary judgment without the opportunity to conduct further discovery." *Thompson v. CDL Partners LLC*, 378 F. App'x. 288, 293 (4th Cir. 2010). In fact, "the failure to file an affidavit under [Rule 56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Evans*, 80 F.3d at 961 (quotation omitted).

### III. Discussion

#### A. Maturity of Motion

The respondents argue Nautilus's motion for summary judgment is premature because it was filed approximately five months before the discovery deadline—August 5, 2013. However, Medford is the only party to explain the need for further discovery. In its response, Medford

states that it intends to add parties to this case and discovery would be necessary after their addition. (*See* Mem. in Opp'n to Mot. for Summ. J. [Docket 40], at 5). However, as of the entry of this order, the April 5, 2013 deadline for joining new parties and the June 20, 2013 deadline for discovery requests have passed with no new parties added. In addition, the respondents have not filed new discovery requests since the motion for summary judgment was filed. No party indicates that any new evidence exists which might impact the interpretation of this insurance contract, nor can I conceive of any further evidence which would have a bearing on the legal interpretation of the contract. Furthermore, the parties concede in their briefing that there is no significant dispute as to the facts of the case.

Additionally, the Fourth Circuit places "great weight" on Rule 56(d) affidavits, which the respondents have not filed. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). For example, in *Thompson v. CDL Partners LLC*, the Fourth Circuit acknowledged that adequate time had been provided for discovery when a motion for summary judgment had been filed five months prior to the discovery deadline. 378 F. App'x. 288, 294 (4th Cir. 2010). In *Thompson*, the non-movant was provided with ample time to "either file a Rule [56(d)] affidavit or attempt to take more discovery." *Id.* Here, as in *Thompson*, the respondents have not filed a Rule 56(d) affidavit nor have they made any apparent effort to conduct further discovery since the filing of the motion for summary judgment. Therefore, I **FIND** that the petitioner's Motion for Summary Judgment [Docket 32] is not premature.

### B. Motions for Summary Judgment

As the choice of law for the instant case is not in dispute, and as the insurance contract at issue was made and is to be performed in West Virginia, I **FIND** that West Virginia law governs the interpretation of the insurance policy for the purposes of the following analysis. *See* Syl. Pt.

7

1, *Mich. Nat'l Bank v. Mattingly*, 212 S.E.2d 754 (W. Va. 1975).

### i. Nautilus's Motion for Summary Judgment

Nautilus moves for summary judgment on the following issues: (1) whether some of the respondents are insureds, (2) whether the claims in the Qualls Lawsuit is covered by the Policy, and (3) whether it has a duty to defend and indemnify the respondents. I will discuss these issues as to each respondent in the following sections.

#### 1. Extent of Coverage for Elk Run and Nautilus's Duty to Defend or Indemnify Elk Run

Although the respondents seek to include Elk Run within the ambit of petitioner's insurance coverage, no evidence has been proffered indicating why coverage extends to Elk Run. Upon examination of the Policy, it is clear that Elk Run is neither the named insured, as Johnny Clark is, nor is it identified as an additional insured, as Medford is. (*See generally* Policy [Docket 33-5]). Furthermore, as there is no direct contract tying Johnny Clark to Elk Run, the provisions of the Policy governing coverage for insured contracts do not apply. Therefore, I **FIND** the Policy does not extend coverage to Elk Run and Nautilus does not have a duty to defend or indemnify Elk Run**.**

#### 2. Extent of Coverage for Johnny Clark and Medford

##### a. Johnny Clark

In the Qualls Lawsuit, Medford has lodged a third party complaint against Johnny Clark for failure to provide serviceable trucks. Medford is also suing for contribution and indemnification pursuant to the Trucking Agreement. In addition, Ms. Lewis is suing Johnny Clark for negligence. Ms. Lewis alleges that Johnny Clark "negligently, recklessly and carelessly provid[ed] the Kenworth coal truck to Medford Trucking in an unsafe and inoperable

8

condition[.]" (Rule 14 Compl. [Docket 33-4], ¶ 11). Thus, the claims arise out of Johnny Clark's maintenance of the truck.

Nautilus claims the Policy's "designated operations" definition and "auto" exclusion bars coverage for claims arising out of the insured's maintenance of an automobile, and thus the Policy does not provide coverage for the claims against Johnny Clark. The respondents put forth four counterarguments in favor of coverage. First, the respondents claim that the "designated operations" definition is ambiguous, and therefore I should construe this provision in favor of coverage. Second, the respondents contend coverage is available under the Policy's "products and/or completed operations" provision. Third, the respondents argue the Policy's "insured contract" clause renders the Policy's "designated operations" definition and "auto" exclusion inapplicable. Fourth, even if this definition and exclusion applies, the respondents assert that I should interpret the Policy according to their reasonable expectation of coverage, and thus find coverage exists in this case. As discussed below, the ambiguity in the "designated operations" clause is illusory. Furthermore, contrary to the respondents' arguments, the Policy's "products and/or completed operations" provision does not create coverage. In addition, the Policy's definitions and exclusions apply, notwithstanding the applicability of the "insured contract" clause. Finally, the reasonable expectations doctrine does not create coverage.

### i. "Designated Operations" Definition Bars Coverage

The Policy states it provides coverage for bodily injury and property damage. (*See* Policy [Docket 33-2]). However, Endorsement L240 amends this grant of coverage. With respect to bodily injury, this endorsement limits coverage to bodily injury arising out of "designated operations":

9

**LIMITATION OF COVERAGE TO DESIGNATED OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion **is added** to **2**. **Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability, Coverage B – Personal And Advertising Injury Liability and Coverage C – Medical Payments**:

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of, or in any way related to, operations performed by any insured or any person or organization for whom any insured may be legally or contractually responsible, unless such operations are "designated operations".

(Endorsement L240 (06/07) [Docket 33-5]). Endorsement L240 defines "designated operations" as "only those operations performed by any insured that are described on the *General Liability Coverage Part Declarations*, the endorsements, or supplements of this insurance." (*Id.* (emphasis added)).

The General Liability Coverage Part Declarations identifies Trucking as a designated operation. (*See* General Liability Coverage Part Declarations [Docket 33-5]). Endorsement S187 amends the Trucking classification by establishing that the designated operation of Trucking "excludes the operation, ownership, maintenance, use or entrustment to others, of any 'auto,'" while indicating that the coverage for Trucking only extends to "products and/or completed operations." (Endorsement S187 (07/09) [Docket 33-5]).

It is undisputed that the truck in this case falls under the definition of "auto." Furthermore, it is undeniable that the "bodily harm" arose out of the ownership, maintenance, use, or entrustment of the truck. Therefore, pursuant to the Policy's "designated operations" definition, the Policy would not cover the claims arising out of the Qualls Lawsuit.

### ii. The "Auto" Exclusion Bars Coverage

Nautilus contends that the Policy's "auto" exclusion bars coverage for the claims against Johnny Clark, which arose out of an vehicular accident. The Policy's "auto" exclusion provides that

> **2. Exclusions**
>
> This insurance does not apply to:
>
> . . . .
>
> **g. Aircraft, Auto Or Watercraft**
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

(CGL Coverage Form [Docket 33-5], at 3-4).

In the Qualls Lawsuit, Ms. Lewis and Medford allege that Johnny Clark failed to adequately maintain the truck and failed to provide a reasonably safe or serviceable truck to Medford. These claims clearly arise out of Johnny Clark's maintenance, ownership, and entrustment of an automobile and therefore coverage for those claims is barred.

As discussed above, the respondents put forth four counterarguments in favor of coverage: (1) the "designated operations" definition is ambiguous, (2) the Policy's "products and/or completed operations" provision creates coverage, (3) the "insured contract" clause prevents the application of the Policy's definitions and exclusions, and (4) the reasonable expectations doctrine creates coverage.

### iii. The "Designated Operations" Definition is Not Ambiguous

The respondents argue that the "designated operations" definition is ambiguous, and thus

11

summary judgment is inappropriate. *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993) (Summary judgment is appropriate if "the contract is unambiguous on the dispositive issue[.]"). In Endorsement L240, "designated operations" is defined as "only those operations performed by any insured that are described on the General Liability Coverage Part Declarations, the endorsements, or supplements of this insurance." (Endorsement L240 (06/07) [Docket 33-5]). In another endorsement, the Truckers Classification, a limitation is provided for the types of coverage granted to trucking operations. (Endorsement S187 (07/09)[Docket 33-5]). Johnny Clark claims that this classification conflicts with the Additional Insured Endorsement L803, which gives Medford Trucking the status of an additional insured under the Policy. On this endorsement, there is a space for a description of the work performed for Medford that was left blank.

According to Johnny Clark, this absence of a description conflicts with the description of Johnny Clark as a trucking operation in the General Liability Coverage Part Declarations. Therefore, to resolve the inconsistency, the Policy should be "interpreted in a manner to include operations not otherwise excluded by the insurance policy and endorsements, including the Auto Exclusion and Truckers Classification." (*See* Mem. in Supp. of Mot. to Dismiss or Stay Mot. for Summ. J. [Docket 38] at 17).

It would be inappropriate to construe the Policy in this way when there is no real ambiguity about the meaning of designated operations. The General Liability Coverage Part Declarations is one of the first pages in the policy and one of the most prominent. (*See* General Liability Coverage Part Declarations [Docket 33-5]). On this page, Trucker and Additional Insured are clearly listed as separate classifications along with references to the relevant endorsements. Although they both modify the Policy, they do so in different ways. There is no

conflict between Medford being listed as an insured and Trucking being included as a designated operation. Furthermore, even if there were a conflict between these endorsements, it is entirely unclear why this conflict would mandate striking out the "auto" exclusion, as the respondents contend. The "auto" exclusion is a provision contained in the main body of the policy and one not modified by either of the endorsements in question.

### iv. The Policy's "Products and/or Completed Operations" Provision Does Not Grant Coverage

Even if the "designated operations" definition is unambiguous, the respondents observe that the designated operation of Trucking provides coverage for "products and/or completed operations." The respondents argue that the truck constituted a completed operation once maintenance was complete and Medford had assumed control of the truck. According to the respondents, even though the Trucking classification, a "designated operation," excludes coverage for bodily injury arising from the use of an automobile, the Policy provides coverage because the bodily injury arose from work that was completed.

However, the definition of "products and/or completed operations" does not include bodily injury "arising out of . . . the transportation of property, unless the injury or damage arises out of a condition in or on a *vehicle not owned or operated by you*, and that condition was created by the 'loading or unloading' of that vehicle by any insured[.]" (CGL Coverage Form [Docket 33-5], at 14 (emphasis added)). As there are no allegations that Johnny Clark did not own or operate the truck or that the condition was created by loading or unloading, this coverage clearly cannot apply to the issue at hand.

13

> v. **The "Designated Operations" Definition and "Auto" Exclusion Apply, Notwithstanding the Applicability of the "Insured Contract" Clause**

The respondents also argue that the "designated operations" definition and "auto" exclusion are inapplicable due to the Policy's "insured contract" clause. The relevant provisions state the following:

> **2. Exclusions**
>
> This insurance does not apply to:
>
> . . . .
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. *This exclusion does not apply to liability for damages:*
>
> . . . .
>> (2) *Assumed in a contract or agreement that is an "insured contract,"* provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.
>
> . . . .
>
> "Insured Contract" means:
>
> . . . .
>
> [A contract] . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third party or organization.

(CGL Coverage Form [Docket 33-5], at 2, 13).

The Policy excludes coverage for damages from bodily injury where the insured contractually assumes the bodily injury liability of a third party. (*Id.*). The "insured contract" clause prevents the application of the "contracts liability" exclusion if the damages arise from an

14

"insured contract." (*Id.*).

As previously mentioned, pursuant to the Trucking Agreement, Johnny Clark agreed to defend and indemnify Medford for any liability "arising out of or incident to the performance" of the Trucking Agreement. (Trucking Agreement [Docket 33-2], Art. 9). Through this agreement, Johnny Clark assumed the tort liability of Medford, and therefore the Trucking Agreement qualifies as an "insured contract." The parties do not dispute this fact.

According to the respondents, because Johnny Clark assumed Medford's liability pursuant to an "insured contract," the "contract liability" exclusion does not apply. Because this exclusion does not apply, the respondents claim there is coverage for the claims against Johnny Clark, regardless of other exclusions in the Policy that might limit the scope of coverage.

Although the "contract liability" exclusion does not apply, the Policy may still not cover the claims arising from the Qualls Lawsuit. The absence of an exclusion from coverage, or the presence of an exception to an exclusion, does not create coverage. *See generally* Syl., *Helfeldt v. Robinson*, 290 S.E.2d 896 (W. Va. 1981) (holding that exception to exclusionary clause did not create coverage where the policy contained other exclusions clearly precluding coverage). Thus, absence of the "coverage liability" exclusion is irrelevant.

This interpretation is also consistent with the principle that an insurance "contract must be considered as a whole, effect being given, if possible, to all parts of the instrument." Syl., *Clayton v. Nicely*, 182 S.E. 569 (W. Va. 1935). For example, the "auto" exclusion states that

> **2. Exclusions**
>
> This insurance does not apply to:
>
> . . . .
>
> **g. Aircraft, Auto Or Watercraft**

15

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
>
> . . . .
>
> This exclusion does not apply to:
>
> . . . .
>
> **(4)** *Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft . . . .*

(CGL Coverage Form [Docket 33-5], at 3-4). If the "auto" exclusion did not otherwise apply to insured contracts, there would be no reason to provide another exception for instances when the insured contractually assumes liability arising from the use of an aircraft or watercraft. Accordingly, I **FIND** that the Policy's definitions and exclusions apply, notwithstanding the applicability of the "insured contract" clause.[1]

### vi. The Reasonable Expectations Doctrine Does Not Create Coverage

Finally, the respondents put forward a claim of coverage under a theory of reasonable expectations. The respondents argue that restricting the coverage under the Policy would "nullify the purpose of indemnification" as agreed to in the Trucking Agreement between Medford and Johnny Clark. (Mem. in Supp. of Cross Mot. for Partial Summ. J. [Docket 41], at 16). Pursuant to the Trucking Agreement, Johnny Clark was to defend and indemnify Medford for any liability

---

[1] The respondents also argue the Endorsements that define "insured contract" are ambiguous. (*See* Endorsements L216 (07/09), L216 (06/07), and S002 (07/09) [Docket 33-5]). Each endorsement provides a separate, inconsistent replacement definition for the definition of "insured contract" provided in Section V of the Policy. Respondents argue that the conflicting definitions should be construed in favor of the insured against the insurer. However, the ambiguity between these different provisions is not relevant to the disposition of this case. The plaintiffs encourage viewing these endorsements in the light most favorable to them, making the Trucking Agreement an insured contract, and Nautilus does not dispute that interpretation. Rather, Nautilus acknowledges the contract as insured under the Policy. (*See* Reply in Supp. of Mot. for Summ. J. [Docket 49], at 3). Therefore, this ambiguity is not relevant to a dispositive issue in this case.

"out of or incident to the performance of" the Trucking Agreement. (Trucking Agreement [Docket 33-2], Art. 9).

"With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syl. Pt. 8, *Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987). Although West Virginia has adopted the reasonable expectations doctrine for insurance policy ambiguities and has even extended it to clear and unambiguous language, when exclusionary language is conspicuous and "disclosed to the insured by a table of contents" the reasonable expectations doctrine does not apply. *Compare Consol. Coal Co. v. Boston Old Colony Ins. Co.*, 508 S.E.2d 102 (W. Va. 1998) (adopting doctrine of reasonable expectations for ambiguous policy language) *and Am. Equity Ins. Co. v. Lignetics, Inc.*, 284 F. Supp. 2d 399 (N.D. W. Va. 2003) (extending doctrine of reasonable expectations to clear and unambiguous language) *with Luikart v. Valley Brook Concrete & Supply, Inc.*, 613 S.E.2d 896 (2005) (establishing criteria for limiting doctrine of reasonable expectations).

In this case, as in *Luikart*, each of the endorsements has a large conspicuous heading indicating its modification of the Policy. Furthermore, the Schedule of Forms and Endorsements is the same type of table that the *Luikart* court recognized as a table of contents. Beyond this, the expectations of Johnny Clark and Medford do not rise to a sufficiently reasonable level to trigger the doctrine. Although the two parties agreed to get insurance to cover all claims arising against Medford, the terms of the Trucking Agreement list four separate types of required insurance: Employer's liability, Commercial General liability, Automobile liability, and Umbrella liability.

(*See* Trucking Agreement [Docket 33-2], at 12). As the Policy is solely a Commercial General Liability policy and the parties expressly contemplated multiple sources of coverage, it is not reasonable for them to expect automotive injury coverage to derive from this Policy. Therefore, I **FIND** that there is no coverage for the claims against Johnny Clark.

### b. Medford

It is undisputed that Medford is an additional insured under the Policy and entitled to general liability coverage. The respondents argue that this general liability coverage extends to all liability indemnified by Johnny Clark in the Trucking Agreement even beyond the coverage available for Johnny Clark. Respondents cite *Maxum Indem. Co. v. Westfield Ins. Co.* in support of the proposition that Nautilus is liable for Johnny Clark's indemnification of Medford, including the deliberate intent claims. No. 2:10-cv-00428, 2011 WL 289270 (S.D. W. Va. Jan 25, 2011) (Copenhaver, J.).

The respondents' reliance on this case is misplaced. *Maxum* was a suit brought to determine the limits of a contractual indemnification clause; specifically, whether the Named Insured's indemnification of an Additional Insured included claims going beyond mere negligence. *Id.* at *6. In *Maxum*, the insurance company settled with the relevant parties and sued for reimbursement to the extent that the Named Insured was not required to indemnify the other parties. *Id.* at *4. That case focused on the analysis of the contract between the insured parties and not on the scope of the underlying insurance policy, unlike this case where the only question at issue is the extent of the Policy's coverage. In other words, the court had to analyze the indemnification agreement to determine if the Named Insured had an obligation to indemnify the Additional Insured. If the Named Insured did not have an obligation to indemnify, the Insurer could seek reimbursement for funds expended in the settlement on behalf of the Additional

Insured.

A significantly more relevant case is *Tidewater Equip. Co., Inc. v. Reliance Ins. Co.*, a Fourth Circuit case in which the court reviewed the extent to which an insurance policy covered additional insureds. 650 F.2d 503 (1981). *Tidewater* cites the well-established proposition that the rights of additional insureds are "limited by the terms and conditions of [the insurance policy.]" *Id.* at 506. Stated differently, "the additional insured enjoys the full benefits of the policy, despite any restrictions contained in a separate contractual agreement with the insured, as well as being subject to all policy exclusions." 9 *Couch on Ins*. § 126:7 (3d rev. ed. 2008). Of course, this principle is subject to the plain text of the policy. If it is clear on the face of the policy that different coverage was meant to apply to the Named Insured and any Additional Insureds, that interpretation will hold. *See, e.g.*, *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408 (4th Cir. 2004). However, this Policy and all of its endorsements use the terms "any insured" or "insured under Section II –Who is An Insured" to make it clear that all restrictions and benefits within the policy apply both to Named Insureds and Additional Insureds. Therefore, I **FIND** that Medford is covered to the same extent that Johnny Clark is covered by the Policy. For some of the same reasons that there is no coverage for Johnny Clark, there is no coverage for Medford.

### 3. Nautilus's Duty to Idemnify and Defend Medford and Johnny Clark

The duty to defend is broader in scope than the duty to indemnify. If any allegation made against the insured is reasonably susceptible of coverage under the insurance policy, then the insurer still has a duty to defend all of the claims. Syl. Pt. 5, *Tackett v. Am. Motorist Ins. Co*., 584 S.E.2d 158 (W. Va. 2003). However, as shown in the above analysis, because all claims in this suit arise out of a fatal vehicular accident and the policy expressly and clearly forgoes any

19

coverage for liability arising from the use, maintenance, or ownership of an automobile, there are no claims remaining in the suit susceptible of coverage under the Policy. Therefore, I **FIND** that Nautilus has no duty to defend Johnny Clark or Medford against any current claims in the underlying state court lawsuit.

### ii. Johnny Clark's Cross Motion for Partial Summary Judgment

Johnny Clark seeks partial summary judgment in its favor and asks this court to rule that Nautilus has a duty to defend Johnny Clark in the Qualls Lawsuit. As discussed above, none of the claims in the Qualls Lawsuit are covered by the Policy and thus Nautilus has no duty to defend Johnny Clark. Accordingly, Johnny Clark's Cross Motion for Partial Summary Judgment [Docket 39] is **DENIED.**

### IV. Conclusion

As there are no ambiguities as to dispositive issues, no genuine issues of material fact, and adequate time for discovery has been allotted in this case, I **FIND** that this case is appropriate for summary judgment. Furthermore, pursuant to the above reasoning, I **FIND** Nautilus has no duty to defend or indemnify Elk Run, Medford, or Johnny Clark. As the Policy does not provide coverage for the claims in this case, regardless of whether any respondent is an insured under the Policy, I decline to address Nautilus's claim that Johnny Clark, LLC is separable from Johnny Clark and is not an insured under the policy. Therefore, I **GRANT** Nautilus's Motion for Summary Judgment [Docket 32]. Johnny Clark's Cross Motion for Partial Summary Judgment [Docket 39] is **DENIED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 20, 2014

20

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE